**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff/Respondent,

v. Civ. No. 16-206 KG/KK
(Cr. No. 15-123 KG)

ANDRES GARCIA-DAMIAN,

Defendant/Movant.

**MAGISTRATE JUDGE'S**
**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on Defendant/Movant Andres Garcia-Damian's ("Defendant") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody with Memorandum of Points and Authorities (Doc. 1) ("Motion"), filed March 18, 2016, and on the United States' Motion to Dismiss and Response to Defendant-Movant's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (Doc. 6), filed May 16, 2016. United States District Judge Kenneth J. Gonzales referred this matter to the undersigned to conduct any proceedings necessary to recommend an ultimate disposition of Defendant's Motion on March 29, 2016. (Doc. 5.)

On January 14, 2015, a federal grand jury charged Defendant with illegally re-entering the United States after deportation in violation of 8 U.S.C. § 1326. Defendant pled guilty to the charged offense without a written plea agreement on March 25, 2015. On September 29, 2015, the Court sentenced Defendant to 46 months' imprisonment, and entered a judgment of conviction against him. Defendant now moves to have his conviction and sentence set aside, and asserts two grounds in support of his Motion. As Ground One, Defendant argues that his trial counsel "provided ineffective assistance . . . at his sentencing by failing to raise valid arguments

and present[] mitigating evidence for a lower sentence and by misleading [Defendant] as to his possible sentence." (Doc. 1 at 5.) As Ground Two, Defendant argues that his trial counsel "did not file a Notice of Appeal from [Defendant's] sentence even though [Defendant] requested him to do so." (*Id.* at 6.)

In response to Ground One of Defendant's Motion, the Government contends that the sentencing arguments Defendant claims his counsel should have made are "spurious" and would have been futile, and that "the Court considered all of the facts underlying" these arguments before rejecting them, "thus negating any possible showing of prejudice." (Doc. 6 at 7.) In response to Ground Two of Defendant's Motion, the Government argues that Defendant's allegations are "conclusory," and notes that trial counsel "has submitted an affidavit indicating that he discussed Defendant's appellate rights with him and that Defendant did not express a desire to appeal following his sentencing hearing." (*Id.* at 9-10.) However, the Government appears to concede the necessity of an evidentiary hearing on this issue, noting that "in section 2255 cases, contested issues of fact may not be decided on the basis of affidavits alone unless the affidavits are supported by other evidence in the record." (*Id.* at 10.)

The Court has meticulously reviewed all of the pleadings and attachments in this civil proceeding and in the underlying criminal case, Cr. No. 15-123 KG, and has examined the transcripts of Defendant's plea and sentence hearings before Judge Gonzales. (CR Docs. 48-50.) As to Ground One, because the Motion, exhibits, and record conclusively establish that Defendant is not entitled to relief, the Court proposes to find that an evidentiary hearing is unnecessary, and recommends that this portion of the Motion be DISMISSED with prejudice. 28 U.S.C. § 2255(b); *United States v. Flood*, 713 F.3d 1281, 1291 (10th Cir. 2013); *United States v. Kennedy*, 225 F.3d 1187, 1193 (10th Cir. 2000). As to Ground Two, however, the Motion raises

contested factual issues that cannot be resolved on the current record.  28 U.S.C. § 2255(b); *Anderson v. Att'y Gen. of Kan.*, 425 F.3d 853, 860 (10th Cir. 2005); *United States v. Lee-Speight*, 529 F. App'x 903, 905-06 (10th Cir. 2013).[1]  The undersigned will therefore hold a limited evidentiary hearing on Ground Two of Defendant's Motion if the Court adopts these Proposed Findings and Recommended Disposition.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On October 27, 2014, the Government filed a criminal complaint charging Defendant with illegally re-entering the United States after deportation on or about October 25, 2014 in violation of 8 U.S.C. § 1326.  (CR Doc. 1.)[2]  The Court initially appointed attorney Santiago Hernandez to represent Defendant.  (CR Doc. 5.)  On January 14, 2015, a federal grand jury issued an indictment charging Defendant with illegal re-entry after deportation in violation of 8 U.S.C. § 1326 (CR Doc. 10), and on January 27, 2015, Defendant pled not guilty to the charged offense.  (CR Doc. 12.)  The Court entered an order permitting attorneys Russell Aboud and John Granberg to substitute as counsel for Defendant on February 23, 2015.  (CR Doc. 17.)

On March 25, 2015, the Court held a change of plea hearing, at which Defendant pled guilty to the indictment without a written plea agreement.  (CR Doc. 23.)  At the hearing, the Court advised Defendant of his rights as set forth in Federal Rule of Criminal Procedure 11(b), and ascertained that Defendant understood these rights and would be waiving them if he pled guilty.  (CR Doc. 50 at 3-6.)  The Court also advised Defendant of, and ascertained that he understood, the nature and factual basis of the charge against him, and the maximum penalties he faced if he pled guilty.  (*Id.* at 4, 7-10.)  The Assistant United States Attorney stated on the

---

[1] Unpublished decisions are not binding precedent in the Tenth Circuit, but may be cited for their persuasive value. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

[2] References to "CR Doc." are to the docket in Cr. No. 15-123 KG (D.N.M.), the underlying criminal case.

record that the maximum penalties for the offense to which Defendant was pleading guilty were "a 20-year term of imprisonment, a three-year term on supervised release, a $250,000 fine, and a $100 special penalty assessment." (*Id.* at 7.) The Court then addressed Defendant as follows:

> THE COURT: All right. Mr. Garcia, did you listen carefully to the maximum penalty that the prosecutor just described for the charges you are facing?
>
> THE DEFENDANT: Yes. Yes, sir.
>
> THE COURT: Do you understand what those penalties are?
>
> THE DEFENDANT: Yes.

(*Id.*)

According to the Pre-Sentence Investigation Report[3] ("PSR"), which was disclosed on April 22, 2015, illegal re-entry after deportation in violation of 8 U.S.C. §1326 has a base offense level of 8, pursuant to United States Sentencing Guidelines ("USSG") § 2L1.2. (PSR ¶ 10.) However, the PSR determined that Defendant's prior conviction of "Indecency with a Child – Sexual Contact" was a "crime of violence," resulting in a 16-level enhancement pursuant to USSG § 2L1.2(b)(1)(A). (*Id.* ¶¶ 11, 23.) Defendant received a reduction of three levels for acceptance of responsibility, resulting in a total offense level of 21. (*Id.* ¶¶ 17-19.) The PSR indicated that Defendant had two prior convictions – the 2013 conviction for "Indecency With a Child – Sexual Contact," and a 2012 conviction for "Assault (Domestic Violence)" – and assigned him one criminal history point for each of these convictions pursuant to USSG § 4A1.1(c). (*Id.* ¶¶ 22-23.) Also, the PSR added two criminal history points pursuant to USSG § 4A1.1(d) because Defendant was still on probation for his 2013 conviction at the time of the

[3] As a matter of practice, PSRs are not filed of record in this district. Here, however, both the Government and Defendant have cited to portions of the PSR in their pleadings. (*See* Doc. 1 at 2-3; Doc. 6 at 2-3.) As such, the Court has reviewed and will also cite to the PSR, and will file it as a sealed exhibit to these Proposed Findings and Recommended Disposition.

instant offense. (*Id.* ¶ 25.) Accordingly, the PSR determined that his total criminal history score was four, and his criminal history category was III. (*Id.* ¶ 26.) "Based upon a total offense level of 21 and a criminal history category of III," the PSR concluded that Defendant's guideline imprisonment range was from 46 to 57 months. (*Id.* ¶ 41.)

The PSR indicated that Defendant had lived in Amarillo, Texas, for eleven years. (*Id.* ¶ 57.) He had no prior convictions for illegally entering the United States. (*Id.*) His mother, two brothers, and two sisters resided in Mexico, while another sister lived in Amarillo, Texas. (*Id.* ¶ 31.) Defendant married Berenice Draper in Amarillo, Texas, in 2010. (*Id.* ¶ 32.) At the time of the PSR's issuance, they had a four-year-old son together, and were "still together and working on their relationship, despite [Defendant's] prior conviction for Indecency With a Child, in which his [eleven-year-old] step-daughter[, Ms. Draper's daughter from a previous relationship,] was the victim." (*Id.*) Ms. Draper and both children are United States citizens. (*Id.* ¶ 57.) The PSR described the circumstances of Defendant's prior conviction for Indecency With a Child – Sexual Contact as follows:

> [Defendant's stepdaughter, then] age eight . . . told officers that while her mother was at work, her step-father, the defendant, asked her to sit on his lap. [The child] further explained that when she sat on the defendant's lap, he rubbed her private area with his hand over her clothes. . . . [The child] advised this same behavior had occurred approximately eight times over the past two months.

(*Id.* ¶ 23.)

On June 24, 2015, after issuance of the PSR, Defendant's counsel filed a Motion for Sentencing Variance, arguing that the Court should decrease Defendant's offense level from 21 to 13, based on the factors set forth in 18 U.S.C. § 3553(a) and the advisory nature of the USSG. (CR Doc. 26 at 1-2.) In the motion, counsel asserted that

> Defendant is the father to a daughter that was the victim of the indecency with a child conviction, made the basis of his sixteen[-]level increase in [the PSR]. The

> mother of the child, and the child, still support the Defendant, [which] is one of the reasons for Defendant asking for his variance. Once [Defendant is] released the parties will continue to reside together as a family. The large increase in Defendant's sentence due to a 16[-]level enhancement will not only punish the Defendant unduly, but would cause harm to his wife and child.

(*Id.* at 2.) At a sentence hearing the following day, counsel provided the Court with letters from Defendant's wife and stepdaughter in support of the motion for a variance. (CR Doc. 49 at 7.) After reviewing the letters, the Court denied the variance. (*Id.*) However, the Court granted Defendant's motion for leave to file untimely objections to the PSR, and continued the sentence hearing to allow Defendant to file his objections. (*Id.* at 7-8.)

Trial counsel duly filed Objections to the Pre-Sentence Report on June 26, 2015, objecting to the sixteen-level enhancement of Defendant's base offense level, and arguing that the Court should determine whether Defendant's prior convictions involved an "'aggravated' or 'violent offense' . . . on a case by [case] basis," rather than categorically, and should also consider "whether . . . any physical harm has occurred." (CR Doc. 32 at 1-2.) In its response filed June 29, 2015, the Government countered that the United States Court of Appeals for the Fifth Circuit has held that the specific offense of which Defendant was previously convicted[4] "constitute[s] sexual abuse of a minor for purposes of [USSG] § 2L1.2(b)(1)(A)(ii)," and therefore a crime of violence resulting in a sixteen-level enhancement. (CR Doc. 33 at 2-3 (citing cases).)

At the continuation of the sentence hearing on September 29, 2015, the Court overruled Defendant's objections to the PSR, stating

> I've reviewed the motion, I reviewed the response, I reviewed the Sentencing Guidelines, specifically, the applicability of Section 2L1.2(b)(1)(A), which speaks to whether there is a 16-level enhancement in this particular instance relating to

[4] Specifically, Defendant was previously convicted of indecency with a child by sexual contact in violation of Texas Penal Code § 21.11(a)(1). (Doc. 1-10 at 7); *see United States v. Elizondo-Hernandez*, 755 F.3d 779, 781-82 (5th Cir. 2014) (per curiam) (holding that this offense constitutes sexual abuse of a minor under USSG § 2L1.2(b)(1)(A)(ii)).

> certain crimes of violence. And . . . I am finding that [Defendant's prior] conviction is a crime of violence that is subject to the 16-level enhancement. I'm making that determination also based on what I have reviewed that I find helpful from the Fifth Circuit, including the cases that are cited in the Government's response. So, I'm finding that the conviction in the defendant's [PSR] . . . and the 16-level enhancement . . . are appropriate and applicable in this particular case as a crime of violence, so the objection is overruled.

(CR Doc. 48 at 10-11.)

Also at the continued sentence hearing, trial counsel argued that Defendant was

> really getting a severe increase in his sentence due to a prior conviction. At the very least, we're asking for the bottom of the guidelines in this, if not possibly a variance. . . . I believe in our last hearing you went over or reviewed letters from not only his wife, but his daughter, who was the victim. And they're still a family unit. In fact, his wife is present in the courtroom. She drove down here from Amarillo. And she loves him and she still wants to try to stay together. . . . [B]ased on those facts, Judge, we're asking that the Court take into consideration the bottom of the guidelines or possibly a variance in this case.

(*Id.* at 5-6.) Defendant then personally addressed the Court, stating, *inter alia*, that: he was "sorry for trying to reenter illegally into the country"; he had lived in the United States for eleven years; he had "always worked so [he] could give [his wife and children] the best that [he] could give them"; his family was "struggling"; and, he returned to the United States "to try and help" them. (*Id.* at 7-9.)

After Defendant's allocution, the Court sentenced Defendant to 46 months' imprisonment, the bottom of the advisory sentencing range. (*Id.* at 12.) The Court then advised Defendant of his appellate rights:

> [Y]ou have pled guilty without waiving your right to appeal this sentence, so, you have that right. So long as you file your notice of appeal within 14 days of the entry of judgment, you may exercise your right to appeal. Now, if you do not have the resources, if you cannot afford the cost of the appeal, you have the right to apply for leave to appeal *in forma pauperis*. So, in other words, under certain circumstances, the cost of the appeal will be paid for you. If you have any questions about that, of course, please consult with Mr. Aboud.

(*Id.* at 12-13.) The Court entered a judgment of conviction against Defendant on the date of sentencing, September 29, 2015. (CR Doc. 37.)

On November 16, 2015, the Court received a letter from Defendant expressing a desire to file an appeal, which the Court construed as a motion for an extension of time in which to file an appeal. (CR Doc. 38; CR Doc. 46 at 2.) The Court appointed Assistant Federal Public Defender Peter Edwards to represent Defendant, and on November 30, 2015, held a hearing on Defendant's motion, at which Mr. Aboud, Mr. Edwards, and the Government, but not Defendant, appeared. (CR Docs. 40, 41; CR Doc. 51 at 1.) On December 11, 2015, after considering counsel's arguments, the Court denied Defendant's motion for an extension of time in which to file an appeal. (CR Doc. 46.) The Court reasoned that the deadline for filing a Notice of Appeal in Defendant's case was October 13, 2015, and, according to Federal Rule of Appellate Procedure 4(a)(5), the Court was not permitted to extend that deadline beyond November 12, 2015. (*Id.* at 2.) Then, although Defendant mailed his letter to the Court on November 12, 2015, the letter itself could not be construed as a Notice of Appeal because it did not satisfy the minimum requirements for such a notice. (*Id.* at 1-2.) The Court therefore concluded that, even if it did extend the deadline for filing a Notice of Appeal to November 12, 2015 – the maximum extension allowed – Defendant had failed to file a Notice of Appeal by that date. (*Id.* at 2.)

Defendant filed the Motion presently before the Court by and through Mr. Edwards on March 18, 2016. (Doc. 1.) On March 22, 2016, the Court ordered the Government to respond to Defendant's Motion, and on March 30, 2016, granted an extension of time for it do so. (Docs. 2, 4.) The Government filed a response and motion to dismiss the Motion in whole or in part on May 16, 2016 (Doc. 6), and this matter is now before the Court for a recommended disposition.

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a federal prisoner who

> claim[s] the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). Relief is available under Section 2255 only if "the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (internal quotation marks and citation omitted) (superseded by statute on other grounds). The court must presume "that the proceedings leading to the conviction were correct"; the burden is on the movant to demonstrate otherwise. *Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989) (citing *United States v. Morgan*, 346 U.S. 502, 512 (1954)).

## III. ANALYSIS

### A. Defendant received effective assistance of counsel at sentencing.

As noted above, Defendant first argues that his trial counsel provided him with ineffective assistance "by failing to raise valid arguments and present[] mitigating evidence for a lower sentence and by misleading Mr. Garcia as to his possible sentence," in violation of the Sixth Amendment. (Doc. 1 at 5.) For a defendant to succeed on a claim of ineffective assistance of counsel, he must demonstrate both that: (1) "counsel's representation fell below an objective standard of reasonableness"; and, (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). In applying the two-pronged *Strickland* test, the Court "may address the performance and prejudice components in any order, but need

not address both if [the defendant] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir. 1998).

Regarding the first *Strickland* prong, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. A court's review of counsel's performance is "highly deferential," *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011), and a defendant must overcome the strong presumption that his counsel rendered adequate assistance, and "made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 689-90 (on habeas review, court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," which defendant must overcome). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690. Also, in the Tenth Circuit, "[a] miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993).

Regarding *Strickland*'s second prong, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. Rather, to establish the prejudice *Strickland* requires,

> [t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. When counsel's alleged deficient performance relates to the negotiation and entry of a guilty plea, a defendant must show that he was prejudiced by the deficient performance because "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *United States v. Moya*, 676 F.3d 1211, 1214 (10th Cir. 2012). When counsel's alleged deficient performance relates to the sentencing process, in turn, "[a] demonstration of prejudice requires a showing of a reasonable probability that, but for counsel's deficient performance, defendant would have received a different sentence." *United States v. Hollis*, 552 F.3d 1191, 1194 (10th Cir. 2009).

In the present matter, the Court first notes Defendant's very brief argument, in Ground One of his Motion, that his trial counsel "misle[d him] as to his possible sentence." (Doc. 1 at 5.) This appears to be based on his November 12, 2015 letter to the Court, in which he wrote that, when he pled guilty, his counsel wrongly "told [him] that [he] would get 12 months and a day." (*Id.*; CR Doc. 38 at 1.) However, in his Motion, Defendant fails to develop this argument factually or legally, or to provide any authority indicating that his counsel's alleged error rose to the level of constitutionally ineffective assistance. (*See generally* Doc. 1 at 7-11.) In fact, the Tenth Circuit has already ruled that such errors do *not* rise to that level; as noted above, "[a] miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel."[5] *Gordon*, 4 F.3d at 1570. The Court therefore proposes to find that Defendant has conclusively failed to satisfy the

[5] In addition, at his plea hearing, Defendant testified that he understood he could be sentenced to up to 20 years' imprisonment for the offense to which he was pleading guilty, significantly reducing the likelihood that his trial counsel's alleged error prejudiced his defense. (CR Doc. 50 at 7.)

first *Strickland* prong as to his allegation that his counsel erroneously predicted his sentence, and recommends that this portion of his Motion be dismissed.

Defendant's other Ground One argument, that his counsel provided him with ineffective assistance at sentencing, is more developed but ultimately no more successful. According to Defendant, his trial counsel erred because he failed to ask the Court for a downward departure or sentencing variance based on: (1) the argument that Defendant's criminal history category overstated the seriousness of his criminal history and the likelihood that he would commit more crimes (Doc. 1 at 9); and, (2) Defendant's "cultural assimilation," *i.e.*, his "long residency and family ties to the United States."[6] (*Id.* at 10.) However, the record makes it abundantly clear that any such requests would have been futile. Initially, Defendant's criminal history category did *not* overstate the seriousness of his criminal history or the likelihood that he would commit more crimes. Defendant does not dispute that, before his sentencing in this case, he had been convicted of indecency with a child for engaging in sexual contact with his then-eight-year-old stepdaughter on eight separate occasions, and also of "assault (domestic violence)." (Doc. 1 at 2-3; PSR ¶¶ 22-23.) While Defendant suggests that these crimes are "relatively trivial" and "not as serious as most convictions that warrant a hefty 16-level enhancement," (Doc. 1 at 10), Defendant has failed to identify any cases with analogous facts that support his position. *Cf. United States v. Sierra-Castillo*, 405 F.3d 932, 935, 942 (10th Cir. 2005) (upholding sentence of 46 months' imprisonment for illegal re-entry after deportation where defendant had prior conviction "for the very serious crime of attempted sexual assault"). Moreover, Defendant

[6] The Court rejects as inaccurate Defendant's contention that trial counsel "did little more than attend [Defendant's] sentencing." (Doc. 1 at 11 (citing *Gonzalez v. United States*, 722 F.3d 118, 136 (2d Cir. 2013).) The record conclusively demonstrates that trial counsel filed a Motion for Sentencing Variance as well as Objections to Presentence Report, presented letters from Defendant's wife and stepdaughter in support of Defendant's request for a variance, and argued for a variance or a sentence at the bottom of the guideline range at the sentence hearing. (CR Doc. 26; CR Doc. 32; CR Doc. 48 at 5-6; CR Doc. 49 at 5-7.)

committed these crimes within a relatively short period of time, and was still on probation for indecency with a child when he illegally re-entered the United States after deportation.[7] (Doc. 6 at 8; PSR ¶¶ 22-23, 25.) In these circumstances, Defendant's criminal history category of III accurately represented the seriousness of his criminal history and the likelihood that he would commit more crimes in the future. Further, in light of the seriousness, timing, and circumstances of Defendant's prior convictions, his cultural assimilation did not justify a lighter sentence. *See, e.g.*, *United States v. Galarza-Payan*, 441 F.3d 885, 889-90 (10th Cir. 2006) (upholding sentence of 57 months' imprisonment for illegal re-entry after deportation despite defendant's cultural assimilation).

In addition, the Court had before it all of the information that Defendant now argues his counsel should have presented, and nevertheless rejected trial counsel's motion for a variance, stating, "I am not inclined to grant a variance based on that motion *or any other basis that [counsel] might have in mind*." (CR Doc. 49 at 5 (emphasis added).) As such, there is no reasonable probability that "the defendant's sentence would . . . have been different had [his] counsel argued this [information] with greater emphasis or detail." *United States v. Burch*, 166 F. Supp. 2d 1319, 1324 (D. Kan. 2001). For these reasons, the Court proposes to find that, even if trial counsel erred in failing to make the sentencing arguments Defendant has identified, Defendant has not demonstrated "a reasonable probability that, but for counsel's deficient performance, defendant would have received a different sentence." *Hollis*, 552 F.3d at 1194. Because the Motion, exhibits, and record conclusively establish Defendant's failure to show that

[7] Also, Defendant appears to have illegally re-entered the United States intending to violate his probation for his indecency with a child conviction by seeking to "be together as a family" with his wife, four-year-old son, and eleven-year-old stepdaughter. (Doc. 1 at 3; CR Doc. 48 at 9.) The terms of Defendant's probation included that he not have "any direct or indirect contact with . . . the victim in this case," and that he not initiate, maintain, or establish contact, or live in the same residence, with "any person(s) age 17 or younger," without the Texas trial court's written permission. (Doc. 1-10 at 12.) It seems quite likely that Defendant's "be[ing] together as a family" with his child and stepchild would have involved contact with the victim, contact with children under the age of seventeen, and/or living in the same residence with children under the age of seventeen, without judicial permission.

his trial counsel's alleged errors at sentencing prejudiced his defense, *Strickland,* 466 U.S. at 687-88, the Court recommends that Ground One of his Motion be dismissed with prejudice.

**B. There are contested factual issues regarding whether Defendant's counsel was ineffective in failing to file a Notice of Appeal.**

"[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Thus, a defendant who shows that his lawyer failed to file a notice of appeal despite the defendant's specific instructions to do so satisfies the first prong of the *Strickland* test. *Id.* Moreover, "if counsel does not file a requested appeal, a defendant is entitled to a new appeal without a showing that his appeal likely would have had merit." *United States v. Garrett*, 402 F.3d 1262, 1265 (10th Cir. 2005) (citations and internal quotation marks omitted). In other words, prejudice from counsel's deficient performance is presumed, thus satisfying *Strickland*'s second prong. *Id.*; *see also United States v. Parker*, 720 F.3d 781, 785-86 (10th Cir. 2013) ("A defendant receives ineffective assistance of counsel if his attorney disregards a specific instruction to take an appeal from a conviction or sentence. Under such circumstances a defendant is entitled to a belated appeal without showing the appeal to have merit.") (citations omitted).

In the present matter, Defendant has submitted a sworn declaration, in which he stated under penalty of perjury that, "[a]lthough [he] asked Mr. Aboud to file an appeal, Mr. Aboud did not file a notice of appeal," nor did Mr. Aboud tell Defendant that he "could ask the Court to appoint a new attorney for [him]" if he could not pay Mr. Aboud. (Doc. 1-12 at 1.) Conversely, the Government has submitted Mr. Aboud's sworn affidavit, in which he attests that he

> had no knowledge of Defendant's desire to appeal his sentence despite the court's admonition of his appellate rights, and my explanation of these rights before sentencing. . . . Defense counsel had no knowledge of Defendant's desiring to

> appeal until his wife contacted Counsel after the deadline to file [a] notice [of] appeal.

(Doc. 6-1 at 2.) As the Government observes, generally, "[i]n section 2255 cases, contested issues of fact may not be decided on the basis of affidavits alone unless the affidavits are supported by other evidence in the record." (Doc. 6 at 10.) Here, there is no other evidence in the record directly supporting either Defendant's or Mr. Aboud's sworn statements, which appear to plainly contradict one another. As such, the Court must hold an evidentiary hearing to resolve the parties' factual dispute. 28 U.S.C. § 2255(b); *Lee-Speight*, 529 F. App'x at 905-06 (trial court erred in failing to hold evidentiary hearing on habeas petition where petitioner submitted "sworn statement that his sentencing counsel . . . failed to file a notice of appeal . . . as requested by petitioner"); *see also Anderson*, 425 F.3d at 860 ("The purpose of an evidentiary hearing is to resolve conflicting evidence.").

## IV. CONCLUSION

For the foregoing reasons, the undersigned proposes to find that the Motion, exhibits, and record conclusively establish that Defendant is not entitled to the relief he seeks as to Ground One of his Motion. Consequently, the undersigned recommends that the Court DISMISS Ground One of the Motion (Doc. 1) with prejudice. As to Ground Two, however, the undersigned proposes to find that the Motion, exhibits, and record show there are contested factual issues that must be resolved at an evidentiary hearing. The undersigned will therefore schedule a limited evidentiary hearing on Ground Two of Defendant's Motion by separate Order if the Court adopts these Proposed Findings and Recommended Disposition.

KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**